IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

KIMBERLY M. SCHOENE,                              No. 3:23-cv-01151-HZ

              Plaintiff,                        OPINION & ORDER

    v.

CARRIE RASMUSSEN, in her official
capacity as District Attorney of Hood River
County; ANTHONY FRASIER, in his
official capacity as Detective of City of
Hood River Police Department; HOOD
RIVER COUNTY DISTRICT
ATTORNEY'S OFFICE, an agency of the
County of Hood River; COUNTY OF
HOOD RIVER, a political subdivision of
the State of Oregon; CITY OF HOOD
RIVER POLICE DEPARTMENT, an
agency of the City of Hood River; and CITY
OF HOOD RIVER, a municipal corporation,

              Defendants.

Kimberly M. Schoene
1801 NW Upshur Ste 100
Portland, OR 97209

     *Pro se*

David Hall
Oregon Department of Justice
100 SW Market St
Portland, OR 97201

Aaron Hisel
Capitol Legal Services
901 Capitol St NE
Salem, OR 97301

     Attorneys for Defendants

HERNÁNDEZ, District Judge:

Plaintiff brings assorted claims against Defendants surrounding various legal proceedings in Hood River, Oregon. Defendants move to dismiss the claims against them. For the following reasons, the Court grants the motions.

## BACKGROUND

This case centers on Defendant Carrie Rasmussen's prosecution of Plaintiff for stalking. In her 233-page Second Amended Complaint ("SAC"), Plaintiff challenges Defendants' conduct in the prosecution and several other legal proceedings. ECF 29. Plaintiff submitted over 2,300 pages of documents in support of the SAC. Schoene Decl., ECF 30. In this Opinion and Order, Defendant Rasmussen and the Hood River County District Attorney's Office ("HRDA") will be referred to as the State Defendants. Defendants Anthony Frasier, Hood River Police Department ("HRPD"), City of Hood River, and Hood River County will be referred to as the County Defendants.

Plaintiff brings the following claims: (1) Fourth Amendment malicious prosecution under 42 U.S.C. § 1983 against all Defendants; (2) state-law malicious prosecution against all Defendants; (3) abuse of process against Defendants Rasmussen and HRDA; (4) intentional infliction of emotional distress ("IIED") against Defendants Rasmussen and HRDA; (5) violations of 28 C.F.R. § 94.101 *et seq.* against Defendants Rasmussen, HRDA, and Hood River County; (6) Fourteenth Amendment due process violations under § 1983 against Defendants Frasier, HRPD, and City of Hood River; (7) First Amendment free speech violations under § 1983 against Defendants Rasmussen, HRDA, and Hood River County; (8) First Amendment Petition Clause violations under § 1983 against Defendants Rasmussen and HRDA; and (9) violation of freedom of expression under Article I, Section 8 of the Oregon Constitution against Defendants Rasmussen and HRDA. SAC ¶¶ 1209-1423. Plaintiff alleges that she suffered economic and noneconomic damages. *Id.* ¶¶ 1156-1179. The Court outlines the relevant facts below and discusses them in more detail as necessary in addressing Defendants' Motions.

## I.    Background and Plaintiff's Suspicions of Child Abuse

Plaintiff Kimberly Schoene is a resident of Portland, Oregon, where she owns and operates a hair salon. SAC ¶¶ 77, 115. Defendant Rasmussen is a citizen of Oregon and was at all relevant times a Deputy District Attorney or District Attorney for Hood River County. *Id.* ¶ 78. Defendant Frasier is a citizen of Oregon and was a detective with HRPD until he retired in January 2021. *Id.* ¶¶ 83 154.

Between 2014 and January 2016, Plaintiff was in a romantic relationship with Michael Allen. *Id.* ¶ 315. Allen later dated Greta Sanchez, a resident of Hood River. *Id.* ¶ 289. In October 2016, a son ("Child") was born to Allen and Sanchez. *Id.* ¶¶ 316, 369. The relationship later soured, and in November 2018, Allen told Plaintiff that Sanchez had filed false accusations

against him and obtained court orders against him. *Id.* ¶ 317. He told Plaintiff that Sanchez had a history of driving under the influence ("DUI"). *Id.* ¶ 319. Allen had obtained full custody of Child in October 2017. *Id.* ¶ 321. He and Sanchez later shared parenting time, but in October 2018, Sanchez filed for and received a protective order against Allen. *Id.* ¶¶ 321, 325. Allen asked Plaintiff to help him challenge the proceedings. *Id.* ¶ 322. As part of this process, Plaintiff requested and received information about Sanchez's criminal history, including police reports, court records, and records from the Oregon Department of Human Services ("ODHS" or "DHS"), through public record requests. *Id.* ¶¶ 336-338. She also found information about Sanchez online. *Id.* ¶ 340. The restraining order against Allen was dismissed on November 19, 2018. *Id.* ¶ 330.

In November 2018, Plaintiff saw Child with a black eye. SAC ¶ 369. The next three times she picked him up from the care of Sanchez, he had bruising and/or black eyes. *Id.* Plaintiff suspected child abuse. *Id.* ¶ 370. Sanchez confirmed that the injuries happened while Child was in her care and gave excuses for each one. *Id.* ¶ 375.

Plaintiff looked up Sanchez's criminal history. *Id.* ¶ 372. In 2008, Defendant Frasier investigated allegations that Greta Sanchez had abused her daughter. *Id.* ¶¶ 155-156. Other officers at HRPD also investigated Plaintiff for theft and DUI. *Id.* ¶ 168. Plaintiff alleges that Sanchez had at least 3 DUIs between 2013 and 2017. *Id.* ¶¶ 381-384. She alleges that Sanchez assaulted Allen while he was holding Child in October 2017. *Id.* ¶ 373. Sanchez was ultimately sent to DUII Court in January 2018. *Id.* ¶ 437.

After researching signs and symptoms of child abuse, Plaintiff called the DHS child abuse hotline in or about November 2018. *Id.* ¶ 379. Plaintiff witnessed other bruises and injuries on Child throughout 2019 and 2020. *Id.* ¶ 463. She occasionally asked Child how an injury

occurred. *Id.* ¶ 464. She did not speak negatively to Child about Sanchez or tell him what to say. *Id.* ¶ 465. Plaintiff continued to call the DHS hotline to report abuse. *Id.* ¶ 467. Multiple DHS caseworkers and medical professionals evaluated the reports of abuse and concluded that there was no abuse by Sanchez, but sometimes suggested that Sanchez should be encouraged to monitor Child more carefully to reduce accidental injuries. *Id.* ¶¶ 517, 531, 535, 540, 546-550, 553, 555-558, 564.

In October and November 2019, Defendant Frasier investigated allegations of child abuse against Sanchez. SAC ¶¶ 792-793; Schoene Decl. Ex. 1. Defendant Frasier spoke with the following individuals as part of his investigation: DHS caseworker Stephanie Campbell, a medical evaluator who evaluated and spoke with Child, Sanchez's teenage daughter, Sanchez, Allen, Plaintiff, Beatriz Lynch at the Columbia Gorge Children's Advocacy Center ("CGCAC"), and DHS caseworker Melissa Cacho. Schoene Decl. Ex. 1. He concluded that Sanchez and her daughter, who denied any child abuse, were more credible than Allen and Plaintiff. *Id.* at 18. Defendant Frasier concluded that the accusations of child abuse were motivated by the ongoing custody dispute between Allen and Sanchez. *Id.*

In January 2020, Plaintiff went to speak with Cacho at the DHS office in Multnomah County. *Id.* ¶ 470. That same month, Plaintiff and Allen picked up Child, and he had a hand grip mark on his upper arm. *Id.* ¶ 471. Plaintiff showed Cacho photographs of the injuries, and Cacho expressed concern. *Id.* ¶ 472. She advised Plaintiff to seek an immediate danger order. *Id.* ¶ 473. A motion for the order was filed on or about January 13, 2020, and a hearing was held the next day. *Id.* ¶¶ 474-475. Attorney Jennifer Hinman represented Sanchez. *Id.* ¶ 476. The judge did not grant the immediate danger order. *Id.* ¶ 482. Plaintiff alleges that DHS caseworker Stephanie

Campbell gave false testimony at the hearing about whether the DHS office in Portland was contacted. *Id.* ¶ 479.

In February 2020, DHS official Andy Perez noted in a report that a doctor stated that the constant documentation and questioning of Child should cease and that the injuries to Child were "nonspecific to child abuse." *Id.* ¶ 555 (citing Schoene Decl. Ex. 73 at 2). In mid-April 2020, Perez told Allen that he could lose custody of Child if Plaintiff did not stop over-reporting injuries. *Id.* ¶ 485. Portland DHS caseworker Maleea Briggs told Plaintiff that she was unaware of such a possibility. *Id.* ¶ 486. The custody trial between Allen and Sanchez began on July 30, 2020. *Id.* ¶ 572. Hinman represented Sanchez. *Id.* ¶ 574.

In December 2020, DHS caseworker Saul Vences completed an assessment in which he stated that Allen failed to understand how Plaintiff "poses a threat to [Child]'s safe [sic] and well-being despite ODHS, judges, Cares Northwest, and Safe Space Children's Advocacy Center [CGCAC] determining she is an unsafe individual." *Id.* ¶ 565 (citing Schoene Decl. Ex. 74 at 38-39). On or about March 18, 2021, Vences concluded that Plaintiff had caused mental injury to Child. *Id.* ¶ 567 (citing Schoene Decl. Ex. 74 at 45). On or about May 10, 2021, DHS issued a "founded" disposition against Plaintiff, concluding that she had caused mental injury to Child. *Id.* ¶ 619 (citing Schoene Decl. Ex. 75 at 1-2). Plaintiff appealed on June 18, 2021. *Id.* ¶ 621. DHS affirmed its finding on July 22, 2021. *Id.* ¶ 622 (citing Schoene Decl. Ex. 75 at 3). Plaintiff appealed on September 8, 2021. *Id.* ¶ 624. On January 19, 2022, DHS concluded that there was not reasonable cause to believe that Plaintiff was responsible for mental injury of Child. *Id.* ¶ 625 (citing Schoene Decl. Ex. 75 at 4). DHS instead found that Plaintiff posed a threat of harm. *Id.* ¶ 628. DHS issued a final order finding a threat of harm on May 10, 2022. *Id.* ¶ 629. On May 20, 2022, Plaintiff appealed the final order in Washington County Circuit Court. *Id.* ¶ 102.

## II.    Investigation and Charging of Plaintiff

In November and December 2020, Defendant Frasier investigated allegations that Plaintiff had stalked Sanchez. SAC ¶¶ 792, 794; Schoene Decl. Ex. 2. Hinman, Sanchez's attorney, called to make the report and forwarded several documents to Defendant Frasier. SAC ¶¶ 816, 821. Defendant Frasier also spoke with Sanchez and Vences and attended a forensic interview of Child. Schoene Decl. Ex. 2 at 10-12. Defendant Frasier did not interview Plaintiff or two social workers with DHS Portland with whom Plaintiff had discussed her concerns about child abuse. SAC ¶¶ 796-798. The police report concluded that there was probable cause to charge Plaintiff with stalking Sanchez. *Id.* ¶ 955 (citing Schoene Decl. Ex. 2 at 12).

On or about August 8, 2021, Plaintiff received an Information from Defendant HRDA, signed by Defendant Rasmussen, charging her with two counts of stalking. SAC ¶¶ 961-963. Count one alleged that Plaintiff "did unlawfully and knowingly alarm or coerce" Sanchez "by engaging in repeated and unwanted contact with [her] by communicating with a third person who has some relationship to [] Sanchez with the intent of affecting the third person's relationship with" Sanchez. *Id.* ¶ 962 (citing Schoene Decl. Ex. 4). Count two alleged that the crime was committed "by repeatedly communicating with business entities with the intent of affecting some right or interest of" Sanchez. *Id.* ¶ 963. Plaintiff entered a plea of not guilty, "but was still required to turn herself in for a book and release at NORCOR in The Dalles, Oregon on October 4, 2021." *Id.* ¶ 980 (citing Schoene Decl. Ex. 18).

In December 2021, the circuit court in Hood River County held a hearing on Plaintiff's motion to dismiss based on venue. *Id.* ¶ 1021. Plaintiff alleges that Defendant Rasmussen instructed one of the state's witnesses at the hearing on how to testify and gave the state's witnesses immunity for any false statements they made about Plaintiff. *Id.* ¶¶ 1033, 1035.

Plaintiff alleges that Defendant Rasmussen later offered her several plea deals, all of which she rejected. *Id.* ¶ 1045. She alleges that Defendant Rasmussen threatened to charge her with perjury. *Id.* ¶ 1056. In an email to Plaintiff's defense attorney, Defendant Rasmussen noted that Plaintiff testified under oath that Child was her "step-son," and stated, "I'm not sure she [Plaintiff] understands the full ramifications of perjury." *Id.* ¶ 1055. The SAC does not allege that Plaintiff married Allen.

In November 2022, Defendant Rasmussen moved to dismiss count 1 of the Information, and the motion was granted. SAC ¶ 1072; Schoene Decl. Ex. 10. The parties filed trial exhibits. SAC ¶ 1073. The State filed only one exhibit, an email from Plaintiff to the mayor of Hood River. *Id.* ¶ 1074; Schoene Decl. Exs. 7-8A. In the email, sent in November 2019, Plaintiff discussed Sanchez's DUIs and stated that Child was in danger and that she was "prepared to go to the media and present my evidence and information about this woman [Sanchez] and the seemingly bias [sic] behavior of this town in Hood River." Schoene Decl. Ex. 8 at 1.

On the day before trial, Defendant Rasmussen moved to set over the trial date because Defendant Frasier, a key witness, had just received a phone call that his grandson was going to die the following morning when he was removed from life support. SAC ¶¶ 1093-1094. Plaintiff alleges that the grandson was not removed from life support until several days later. *Id.* ¶¶ 1097-1098. She alleges that the reason given for the motion was a false excuse to cover up a lack of evidence. *Id.* ¶ 1093. The circuit court granted the postponement and set trial over until March 2023. *Id.* ¶ 1100. In January 2023, Plaintiff moved to dismiss the remaining count of the Information. *Id.* ¶ 1119. The judge denied the motion. *Id.* ¶ 1126.

In March 2023, a settlement conference was held. *Id.* ¶ 1127. Defendant Rasmussen repeated her previous plea offer. *Id.* ¶ 1128. The judge spoke separately with Plaintiff and her

attorney and then with Defendant Rasmussen. *Id.* ¶¶ 1131-1133. Defendant Rasmussen then agreed to dismiss the remaining count against Plaintiff with the stipulation that the statute of limitations be extended for one year from the date of entry of judgment. *Id.* ¶ 1134. Judgment was entered on March 24, 2023. *Id.* ¶ 1135. The conditional judgment of dismissal provides that Plaintiff cannot have any contact with Sanchez or her child and that if Plaintiff suspects abuse of the child, she is to report it to her attorney rather than contacting any child welfare agencies. Hisel Decl. ¶ 2, Ex. 1 at 7, ECF 37.[1] It also provides that if Plaintiff violates any of the conditions, the State may reissue the charge prior to March 24, 2024. *Id.* at 8. The conditions terminated on March 24, 2024. *Id.* at 7.

## III.    Use of VOCA Funds

In 2009, Defendant Rasmussen cofounded the Columbia Gorge Children's Advocacy Center ("CGCAC"). SAC ¶¶ 12, 129. CGCAC, also known as "Safespace," is a nonprofit organization that investigates child abuse. *Id.* ¶¶ 183-184. Plaintiff alleges that after joining the District Attorney's Office, Defendant Rasmussen remained heavily involved in hiring at CGCAC and stayed on the Board of Directors. *Id.* ¶¶ 132-135. She alleges that Defendant Rasmussen "hand-picked the various members of the CGCAC Board of Directors, and controls all the major decisions of CGCAC." *Id.* ¶ 135. Plaintiff alleges that in July 2021, Defendant Rasmussen requested grants for CGCAC pursuant to the Victims of Crimes Act ("VOCA"). *Id.* ¶ 722. Plaintiff alleges that "VOCA funds were improperly diverted from actual victims to assist Greta Sanchez in the 'stalking' matter[.]" *Id.* ¶ 754.

---

[1] The Court incorporates by reference the conditional judgment of dismissal submitted by County Defendants because the SAC relies on it, it is central to Plaintiff's claims, and Plaintiff does not dispute the authenticity of the copy submitted by County Defendants. *See Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006).

## IV.    Plaintiff's State Court Lawsuit

On March 22, 2022, Plaintiff sued Defendant Rasmussen, CGCAC, and employees and board members of CGCAC in Multnomah County Circuit Court. SAC ¶ 100; Schoene Decl. Ex. 31. Soon after Plaintiff served the summons and complaint on Defendant Rasmussen, Defendant Rasmussen emailed Plaintiff's defense attorney, attaching the complaint. SAC ¶ 1066. As Plaintiff's lawsuit proceeded, Defendant Rasmussen continued to forward Plaintiff's filings to Plaintiff's defense counsel. *Id.* ¶¶ 1067-1069. Defendant Rasmussen advised that she might use some of the documents for cross-examination. *Id.* ¶ 1069.

Plaintiff alleges that as her lawsuit proceeded, Defendant Rasmussen directed the attorney representing the defendants "to create problems in the litigation." *Id.* ¶ 1141. Plaintiff alleges that the attorney for the defendants, Heather Van Meter, included false information in a motion to change venue and failed to file a motion to seal. *Id.* ¶ 1143. Plaintiff states that she "has good cause to believe that Defendant Rasmussen has instructed Van Meter to object to any discovery request made by Schoene, and to generally not provide any discovery or any professional courtesies to Schoene." *Id.* ¶ 1154. The case is alleged to be ongoing and "stalled for many months." *Id.* ¶ 1155.

## V.    Plaintiff's Public Records Requests

Between June 2021 and December 2021, Plaintiff filed public records requests with Defendant HRPD, the Hood River County Sheriff's Department, Hood River County Circuit Court, and Defendant HRDA. *Id.* ¶ 984. None of the agencies provided records to Plaintiff in 2021. *Id.* ¶ 985. Plaintiff states that she "has good cause to believe that Defendant Rasmussen advised the public agencies other than DHS to also not provide records" to her. *Id.* In January 2022, Plaintiff submitted a public records request to Defendant HRPD, but was told the records

were not available due to pending litigation and that she should contact the district attorney's office. *Id.* ¶¶ 989-990. Plaintiff submitted further requests to Defendant HRPD in July 2022 and was told that the information she requested was not available per the Hood River County District Attorney. *Id.* ¶¶ 991-994. She was informed on August 3, 2022, that her request had been denied. *Id.* ¶ 999. After Plaintiff criticized the response, Defendant HRPD stated that it could disclose the records after approval from Defendant Rasmussen. *Id.* ¶¶ 1000-1001. Plaintiff did not receive the records. *Id.* ¶ 1002. Plaintiff received records from DHS in response to a records request after the attorney general reviewed her request. *Id.* ¶¶ 1010-1014.

## VI.    Plaintiff's Filings in Sanchez's Criminal Cases

Plaintiff alleges that the judge presiding over Sanchez's third DUI case in Hood River improperly handled the matter and that Defendant Rasmussen knowingly went along with the judge's plan. SAC ¶¶ 636-637. The SAC alleges that after Sanchez completed drug court in 2019, her attorneys filed motions to set aside some of her convictions despite knowing she was not eligible for such relief. *Id.* ¶¶ 657-658. The SAC alleges that "Defendant HRDA knowingly and intentionally did not file an objection to the motion to set aside[.]" *Id.* ¶ 666. The judge entered orders setting the convictions aside. *Id.* ¶ 668. In May 2021, Sanchez's attorneys filed four motions to set aside convictions. *Id.* ¶ 671. Plaintiff discovered that Sanchez had filed the motions, and Plaintiff filed objections to the motions with the court. *Id.* ¶¶ 683-684, 686. After Plaintiff filed objections in Sanchez's cases, a deputy district attorney with Defendant HRDA filed objections in two of Sanchez's cases. *Id.* ¶ 687.

On August 2, 2021, Plaintiff attempted to file documents in Hood River County Circuit Court in two of Sanchez's cases. *Id.* ¶ 704. The attending clerk told Plaintiff to wait, then walked away and came back to tell Plaintiff that the court needed to review the documents before

accepting them for filing, as the clerk had been instructed by her supervisor. *Id.* Plaintiff asked to speak to the supervisor. *Id.* The supervisor, Mareesa Hanson, told Plaintiff that the court needed to review the documentation before accepting it for filing. *Id.* Plaintiff explained that she had complied with court requirements. *Id.* She waited while Hanson was on the phone discussing the filing. *Id.* Hanson returned and told Plaintiff that the filing was refused because Plaintiff was not a party to the proceeding, and that Plaintiff could file her documents down the hall with the district attorney if she wanted. *Id.* Plaintiff was in disbelief. *Id.* She told Hanson "that any action she was taking was on behalf of the Hood River County Circuit Court, as their agent and representative." *Id.* Hanson told Plaintiff that the District 7 Trial Court Administrator had said that the filings should be refused. *Id.* Plaintiff took the refused filings and left the courthouse. *Id.*

About ten minutes after Plaintiff left, she received a call from Hanson. *Id.* ¶ 708. Hanson said she had talked to her supervisor again and told Plaintiff it might be possible to file the documents, but she wanted a copy. *Id.* Plaintiff declined to file in Hood River County and stated that she would file in Multnomah County and Salem instead. *Id.* Plaintiff filed an affidavit with the court about the incident. *Id.* ¶ 709 (citing Schoene Decl. Exs. 42, 44). Plaintiff states that she "has good cause to believe that Defendant Rasmussen gave instructions to Ms. Hanson to refuse" the filings. *Id.* ¶ 713. The SAC alleges that Sanchez's attorney later moved to strike affidavits in support of the motions to set aside the convictions because they contained erroneous information. *Id.* ¶¶ 714-715.

## VII.    Procedural History

Plaintiff submitted a tort claims notice under the Oregon Tort Claims Act ("OTCA") on or about October 27, 2021, and again on or about November 21, 2022. SAC ¶¶ 94-95. Plaintiff sued Defendants on August 7, 2023. Compl., ECF 1. She amended her complaint as a matter of

course on September 5, 2023. ECF 4. County Defendants moved to dismiss on September 26, 2023. ECF 11. Plaintiff responded to the motion and moved for leave to amend, which the Court granted. ECF 20, 22, 25. Plaintiff filed the SAC on December 22, 2023. All Defendants move to dismiss the SAC. ECF 36, 38. The Court took the Motions under advisement on March 15, 2024.

Plaintiff asks the Court to take judicial notice that Defendant Rasmussen is not running for re-election as District Attorney of Hood River County. Pl. Req., ECF 42. Defendants did not respond to the request. The Court "may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). The Court "must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c)(2). Plaintiff attaches news articles from Columbia Community Connection News and the Columbia Gorge News in support of her requests. Pl. Req. Ex. A. She also attaches a formal announcement from Defendant Rasmussen stating that she will not be running for re-election. Id. Ex. B. The Court concludes that Defendant Rasmussen's announcement that she will not run for re-election is a proper subject for judicial notice. The Court also concludes that Defendant Rasmussen's decision not to run for re-election is not relevant to the analysis of Plaintiff's claims, and therefore declines to take judicial notice. See Santa Monica Food Not Bombs v. City of Santa Monica, 450 F.3d 1022, 1025 n.2 (9th Cir. 2006) (declining to take judicial notice of irrelevant documents); Genasys Inc. v. Vector Acoustics, LLC, 638 F. Supp. 3d 1135, 1147 (S.D. Cal. 2022) (same); In re Apple Inc. Sec. Litig., No. 4:19-CV-02033-YGR, 2023 WL 4195051, at *2 (N.D. Cal. June 26, 2023) (same).

//

//

13 – OPINION & ORDER

**STANDARDS**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the claims. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). When evaluating the sufficiency of a complaint's factual allegations, the court must accept all material facts alleged in the complaint as true and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012). A motion to dismiss under Rule 12(b)(6) will be granted if a plaintiff alleges the "grounds" of his "entitlement to relief" with nothing "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)[.]" *Id.* (citations and footnote omitted).

To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In other words, a complaint must state a plausible claim for relief and contain "well-pleaded facts" that "permit the court to infer more than the mere possibility of misconduct[.]" *Id.* at 679.

Courts must liberally construe pro se pleadings. *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). Dismissal of a pro se complaint without leave to amend is proper only if it is clear that the deficiencies of the complaint could not be cured by amendment. *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995).

**DISCUSSION**

The Court first addresses Plaintiff's claims under § 1983 and concludes that they must be dismissed against all Defendants. The Court then concludes that Plaintiff's claim for misuse of VOCA funds fails as matter of law. Next, the Court finds that Plaintiff's state-law claims must be dismissed against all Defendants. The Court declines to grant leave to amend and declines to award attorney fees to County Defendants.

**I.      Section 1983 Claims**

To state a claim under § 1983, Plaintiff must allege that Defendants (1) were persons acting under color of state law and (2) deprived Plaintiff of a federal constitutional right. 42 U.S.C. § 1983.

A.      Defendants Rasmussen and HRDA

State Defendants argue that sovereign immunity bars Plaintiff's § 1983 claims against them. State Def. Mot. 6, ECF 38. The Eleventh Amendment to the United States Constitution provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State[.]" U.S. Const. amend. XI. The Supreme Court has interpreted the Eleventh Amendment to also bar federal suits brought against a state by its own citizens. *Hans v. Louisiana*, 134 U.S. 1, 20-21 (1890); *see Employees of Dep't of Pub. Health & Welfare v. Dep't of Pub. Health & Welfare*, 411 U.S. 279, 280 (1973) ("[A]n unconsenting State is immune from suits brought in federal courts by her own citizens as well as citizens of another state."). Thus, the Eleventh Amendment stands "for the constitutional principle that state sovereign immunity limit[s] the federal courts' jurisdiction under Article III." *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 64 (1996). Under that principle, "[s]tates may not be sued in federal court unless they consent to it

in unequivocal terms or unless Congress, pursuant to a valid exercise of power, unequivocally expresses its intent to abrogate the immunity." *Green v. Mansour*, 474 U.S. 64, 68 (1985).

District attorneys are state officers in Oregon. *State ex rel Rosenblum v. Nisley*, 367 Or. 78, 85, 473 P.3d 46 (2020); *State v. Clark*, 291 Or. 231, 245, 630 P.2d 810 (1981). Therefore, the district attorney's office is a state office for acts taken in its prosecutorial capacity. *Jackson v. Barnes*, 749 F.3d 755, 767 (9th Cir. 2014). Other courts in this district have recognized that Oregon has not waived sovereign immunity for federal constitutional claims. *Oregon Manufacturers & Com. v. Oregon Occupational Safety & Health Div.*, No. 1:22-CV-00875-CL, 2022 WL 17820312, at *5 (D. Or. Dec. 20, 2022), *appeal dismissed*, No. 23-35044, 2023 WL 4586015 (9th Cir. Mar. 10, 2023). Nor does § 1983 abrogate Oregon's sovereign immunity. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989) ("Section 1983 . . . does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties."). Accordingly, Defendant HRDA is entitled to sovereign immunity, and Plaintiff's § 1983 claims against it must be dismissed.

The Eleventh Amendment generally bars suits in federal court brought against state officials in their official capacities. *See* 491 U.S. at 71 ("[A] suit against a state official in his or her official capacity . . . is no different from a suit against the State itself.") (citations omitted). An exception exists for federal claims brought against state officials in their official capacities seeking prospective relief. *Ex parte Young*, 209 U.S. 123 (1908). Here, however, Plaintiff seeks damages, so *Ex parte Young* does not apply. Plaintiff's § 1983 claims against Defendant Rasmussen must be dismissed because sovereign immunity applies.

Defendant Rasmussen also argues that absolute prosecutorial immunity bars Plaintiff's § 1983 claims against her. State Def. Mot. 7-14. In her response, Plaintiff criticizes the doctrine.

Pl. Resp. 2-3, ECF 43. Plaintiff also moves to supplement her response with three additional cases about absolute prosecutorial immunity. Pl. Mot. to Supp., ECF 45. The Court grants that motion. Because sovereign immunity bars Plaintiff's § 1983 claims against Defendant Rasmussen in federal court, the Court declines to reach the issue of absolute prosecutorial immunity.

B.    Defendants Hood River County and the City of Hood River

Defendants Hood River County and the City of Hood River argue that the § 1983 claims must be dismissed against them because there is no vicarious liability for § 1983 claims. County Def. Mot. 4-5, ECF 36. Plaintiff's claims against these Defendants are based on a respondeat superior theory. SAC ¶¶ 92, 1212. The theory of respondeat superior does not apply to § 1983 claims. *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691 (1978). The § 1983 claims must be dismissed as to the County and the City.

C.    Defendant HRPD

Defendant HRPD argues that the § 1983 claims against it must be dismissed because it is categorically an improper defendant. County Def. Mot. 3-4. Defendant is correct. "An individual can only bring a claim for civil rights violations under 42 U.S.C. § 1983 against a 'person' who acted under color of state law. *Harris v. City of Portland Police Dep't*, No. 3:15-CV-00853-HZ, 2016 WL 740425, at *5 (D. Or. Feb. 24, 2016). Departments of local governmental units (as opposed to local governmental units themselves, such as counties or municipalities) "can only be sued if they are intended to be separate and distinct legal entities." *Id.* (citing *Lukens v. Portland Police Bureau*, No. 3:11-CV-00827-MO, 2011 WL 5999376, at *2 (D. Or. Nov. 29, 2011)). *See also Hervey v. Estes*, 65 F.3d 784, 792 (9th Cir. 1995) (holding that interagency task force was not a separate and distinct legal entity); *Brandon v. Holt*, 469 U.S. 464, 472 (1985) (noting that

in *Monell*, the City of New York, and not the city's Department of Social Services, was the real party in interest because the latter had no separate identity from the city).

This Court and other courts in this district have held that local law enforcement agencies in Oregon were not intended to be separate and distinct legal entities and thus cannot be sued under § 1983. *E.g.*, *Harris*, 2016 WL 740425, at *5 (holding that the Portland Police Bureau was not a separate entity from the City of Portland); *Sullivan v. Multnomah Cnty.*, No. 3:19-cv-00995-JGZ, 2021 WL 4248082, at *13 (D. Or. Sept. 17, 2021) (holding that the Multnomah County Sheriff's Office was not a separate entity from Multnomah County); *Gorman v. Douglas County et al.*, 6:21-cv-01622-AA, 2023 WL 5629821, at *11 (D. Or. Aug. 31, 2023) (holding that the Douglas County Sheriff's Office was not a separate entity from Douglas County). The § 1983 claims against Defendant HRPD must be dismissed.

### D.    Defendant Frasier

Defendant Frasier is a proper defendant under § 1983. County Defendants argue that the § 1983 claims against him fail on the merits. County Def. Mot. 5-13. In the alternative, they argue that Defendant Frasier is entitled to qualified immunity. *Id.* at 13-14.

#### i.    Malicious Prosecution Claim

To bring a claim for malicious prosecution under the Fourth Amendment, Plaintiff must allege (1) that charges were brought without any probable cause; (2) that the motive in instituting the suit was malicious, (3) that the prosecution terminated in her favor, and (4) that the malicious prosecution resulted in a seizure of Plaintiff. *Thompson v. Clark*, 596 U.S. 36, 43 n.2, 44 (2022). With respect to the second element, the *Thompson* Court explained that historically, a malicious motive referred to bringing charges "without probable cause and for a purpose other than bringing the defendant to justice." *Id.* at 44. The Supreme Court did not decide whether the

plaintiff must establish malice or another mental state besides a lack of probable cause. *Id.* at n.3. The Court finds it unnecessary to do so here. As for the third element, the Supreme Court concluded that the plaintiff need not show that the prosecution ended with an affirmative indication of innocence; "[a] plaintiff need only show that the criminal prosecution ended without a conviction." *Id.* at 48-49. County Defendants challenge all four elements of the claim.

        a.      Charging Without Probable Cause

County Defendants argue that Plaintiff cannot meet the first two elements because she cannot show that Defendant Frasier instituted charges or that he lacked probable cause. County Def. Mot. 6-10. They are correct.

The decision to file criminal charges is ordinarily presumed to result from the independent decision of the prosecutor, but this presumption can be overcome by showing that state or local officials "improperly exerted pressure on the prosecutor, knowingly provided misinformation to him [or her], concealed exculpatory evidence, or otherwise engaged in wrongful or bad faith conduct that was actively instrumental in causing the initiation of legal proceedings." *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1067 (9th Cir. 2004).

The SAC fails to overcome the presumption that Defendant Rasmussen made an independent decision to prosecute Plaintiff. The SAC alleges that Defendant Rasmussen instructed Defendant Frasier to make a police report that would support a stalking charge against Plaintiff. SAC ¶¶ 45, 956. It alleges that Defendant Rasmussen wrote the conclusion in the police report and forwarded it to Defendant Frasier to include in his report. *Id.* ¶ 957. It alleges that this conclusion was what Defendant Rasmussen used to charge Plaintiff with stalking. *Id.* ¶ 960. In sum, the SAC alleges that charges were instituted by Defendant Rasmussen. Plaintiff's malicious prosecution claim against Defendant Frasier fails for this reason alone.

Even if Plaintiff alleged that Defendant Frasier instituted the charges, the SAC fails to allege a lack of probable cause to believe that Plaintiff had committed stalking. "Probable cause exists where the facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution in the belief that an offense has been or is being committed." *Stoot v. City of Everett*, 582 F.3d 910, 918 (9th Cir. 2009) (cleaned up) (citations omitted). "Probable cause requires only a fair probability or substantial chance of criminal activity." *Ewing v. City of Stockton*, 588 F.3d 1218, 1223 (9th Cir. 2009) (citation omitted). And "[b]ecause many situations which confront officers in the course of executing their duties are more or less ambiguous, room must be allowed for some mistakes on their part. But the mistakes must be those of reasonable [people], acting on facts leading sensibly to their conclusions of probability." *Stoot*, 582 F.3d at 918 (internal quotations omitted).

Plaintiff was charged with stalking under O.R.S. 163.732. Hisel Decl. Ex. 1 at 5-8; Schoene Decl. Ex. 4.[2]

A person commits the crime of stalking if:

> (a) The person knowingly alarms or coerces another person or a member of that person's immediate family or household by engaging in repeated and unwanted contact with the other person;

> (b) It is objectively reasonable for a person in the victim's situation to have been alarmed or coerced by the contact; and

> (c) The repeated and unwanted contact causes the victim reasonable apprehension regarding the personal safety of the victim or a member of the victim's immediate family or household.

O.R.S. 163.732(1).

---

[2] Both parties submitted a copy of the Information charging Plaintiff with stalking, and the two versions appear to be identical. Neither side challenges the other's submission.

"'Alarm' means to cause apprehension or fear resulting from the perception of danger."

O.R.S. 163.730(1). To "coerce" is "to restrain, compel or dominate by force or threat." O.R.S.

163.730(2). "Contact" includes, among others, "[c]oming into the visual or physical presence of

the other person," "[f]ollowing the other person," "[s]ending or making written or electronic

communications in any form to the other person," "[c]ommunicating with the other person

through a third person," "[c]ommunicating with a third person who has some relationship to the

other person with the intent of affecting the third person's relationship with the other person,"

and "[c]ommunicating with business entities with the intent of affecting some right or interest of

the other person." O.R.S. 163.730(3)(a), (b), (d), (f), (h), (i). Finally, "'[r]epeated' means two or

more times." O.R.S. 163.730(7).

Contacts based on expressive communication such as speech or writing "must consist of

a threat that convincingly expresses *to the addressee* the intention that it will be carried out, and

that the actor has the ability to do so." *State v. Johnson*, 328 Or. App. 340, 344, 536 P.3d 1029

(2023) (citation omitted) (emphasis in original).

In support of her claims, Plaintiff submitted the police report she alleges forms the basis

for the stalking charges. Schoene Decl. Ex. 2. The Court therefore considers whether the police

report supports a finding of probable cause. Defendant Frasier wrote that on November 3, 2020,

he was contacted by an attorney, Jennifer Hinman, who stated that her client (Sanchez) was

concerned that she was being stalked by her estranged boyfriend's current girlfriend, i.e.,

Plaintiff. *Id.* at 4. Hinman explained that Sanchez was concerned about her child and afraid to

allow him to live a normal life "due to the constant threat of DHS and Law Enforcement

intervention." *Id.* Sanchez reported that she had changed her life and daily interactions with her

child because of "the constant coercive behavior directed at her by" Plaintiff. *Id.* Defendant

Frasier wrote that Plaintiff "has shown her intent to affect" the relationship between Sanchez and her son "by constantly berating him with negative interaction and badgering him about his mother . . . by photographing him, recording him and interviewing him about his interactions with" his mother, specifically suggesting that his mother was abusing him. *Id.* Defendant Frasier also wrote that Plaintiff had taken the child "to medical facilities on multiple occasions with the intent to prove the crime of child abuse or assault" by Sanchez. *Id.* He wrote that each allegation of abuse had been investigated and found explainable. *Id.*

Defendant Frasier wrote that Sanchez's attorney forwarded several items, including (1) an affidavit from the child's father (Allen) showing how many times the DHS hotline was called; (2) copies of posts Plaintiff made on social media about how the child was being abused, including a video of Plaintiff interviewing the child; (3) a custody judgment signed on December 7; (4) a report by a doctor, Dr. Adewusi, showing that Plaintiff's statements about Sanchez were baseless; (5) a report by another doctor, Dr. Hensen; (6) a letter Plaintiff wrote to the City Council about Sanchez; and (7) a doctor's report from when Plaintiff had recently taken the child to the doctor for investigation of abuse contrary to a court order that only the child's biological parents were supposed to take him to the doctor. *Id.* at 5. Defendant Frasier wrote that he reviewed a video of Plaintiff interviewing the child and "berating" him. *Id.* He reviewed a Facebook post by Plaintiff accusing Sanchez of abusing the child; the post included a video of Plaintiff interviewing the child with what Frasier termed "leading questions." *Id.* at 5-6. Defendant Frasier wrote that Hinman also gave him a link to a GoFundMe account organized by Plaintiff that includes a photograph of the child with a bruise and seeks donations, with a long description of how the child was abused and an assertion that DHS was not protecting him, as well as a discussion of Sanchez's criminal history. *Id.* at 6-9.

Defendant Frasier then referenced his October-November 2019 investigation of Sanchez for allegations brought by Plaintiff, noting that he found no criminal wrongdoing by Sanchez but referred it to DHS to look into mental abuse of Child by Plaintiff. *Id.* at 9. He noted that he had concluded that Plaintiff was motivated by the custody dispute and that she was "scouring all police and ambulance reports," photographing Child when he arrived for visits, "and making multiple emergency room visits and reports of abuse to DHS Child welfare." *Id.* Defendant Frasier wrote that Plaintiff had made 17 official record requests to HRPD and emailed the mayor and city council asking them to help a child who was being abused. *Id.* He wrote that in the email Plaintiff sent, she discussed Sanchez's criminal history and alleged that various individuals in Hood River had covered up for Sanchez. *Id.*

Defendant Frasier wrote that since February 2019, there had been twenty-three calls into the child abuse hotline, eleven of which were made by Plaintiff and three of which were "made by people who learned through" Plaintiff. *Id.* at 9-10.

Defendant Frasier wrote that on December 14, 2020, he received a voicemail from Sanchez, who stated that Plaintiff had accused her of abuse; Sanchez referenced the GoFundMe page. *Id.* at 10. Defendant Frasier contacted her two days later, and she reported that Plaintiff was continually making accusations against her and "it was greatly affecting her life." *Id.* Sanchez reported that she was "extremely nervous." *Id.* She felt as though she had heart murmurs from stress. *Id.* She reported that one time she was picking up her child and Plaintiff told her to "Quit sticking your tongue down his [child's] throat." *Id.* The day after Sanchez was awarded custody of her child, Plaintiff filed new allegations of abuse against her. *Id.* She stated that she was scared of what Plaintiff and Allen would do to her. *Id.* She then ended the call because DHS had shown up at her home to investigate new allegations of abuse. *Id.* She called

back an hour later, crying and saying that Plaintiff would turn on video and reward the child with

candy if he said the right things. *Id.* She told Defendant Frasier that her son had told her that

Plaintiff said Sanchez hit him. *Id.* at 11. She told Defendant Frasier that she believed Allen knew

she was not abusing Child. *Id.*

Defendant Frasier wrote that shortly after speaking to Sanchez, he received a call from a

DHS children services worker, Saul Vences, who reported new allegations of neglect received on

December 15, 2020. *Id.* at 11. Plaintiff had made the call. *Id.* Vences stated that DHS Child

Welfare was currently investigating Plaintiff for mental injury of the child. *Id.* He advised of a

forensic interview of the child at CGCAC scheduled for December 17, 2020. *Id.* Defendant

Frasier wrote that he attended the forensic interview. *Id.* The child reported that he did not get

hurt at his mother's house and that she was "so good." *Id.* He avoided speaking about his father's

house or about Plaintiff. *Id.* He identified private body parts when asked to do so and said no one

had touched his private parts. *Id.* Defendant Frasier wrote that after the interview, he learned that

the case for mental harm against Plaintiff would be going from unfounded to supporting mental

injury of the child. *Id.* Vences told Defendant Frasier that he had not seen indicators that Sanchez

had abused Child. *Id.* at 12. He stated that Sanchez had cooperated with DHS investigations, but

Plaintiff was not cooperative. *Id.* Vences also reported knowing of the GoFundMe and the videos

Plaintiff took of the child. *Id.* He stated that Allen was unaware of the account and asked

Plaintiff to delete it. *Id.* He also stated that Dr. Adewusi was reviewing the case to help DHS

understand the possible effect of repeated calls, examinations, and interviews on Child. *Id.*

Defendant Frasier concluded, "Based off all this information that has been given to me I

believe there is probable cause that Kimberly Schoene . . . is stalking Greta Sanchez under ORS

163.732[.]" *Id.* He wrote that Plaintiff was communicating with a third person (Child) who has a

relationship with the victim with the intent of affecting the third person's relationship with the other person. *Id.* He also wrote that Plaintiff was "[c]ommunicating with business entities (DHS, FaceBook, Gofundme, ect. [sic]) with intent of affecting some right or interest of the other person." *Id.* He wrote, "I am forwarding this information to the D.A. for review and possible charges." *Id.*

On its face, this police report establishes probable cause to charge Plaintiff with stalking. The information in the police report provides that Plaintiff was recording Sanchez whenever she saw her; posting online with detailed information about Sanchez's alleged abuse of Child, including photos of Child and video interviews with Child; contacting the mayor and city council with detailed negative information about Sanchez; taking Child to be examined for possible abuse without permission; and repeatedly making calls to report child abuse that were all unfounded. Sanchez also alleged that she felt fear and stress from this conduct and that it was affecting her relationship with her son. She even had to interrupt her conversation with Defendant Frasier because DHS had showed up at her home to interview her again about possible abuse reported by Plaintiff. The police report also establishes that DHS believed Plaintiff's conduct was causing mental injury to Child.

Plaintiff argues that there was no probable cause for stalking because the police report did not show an "unequivocal threat." SAC ¶ 1192 (citing *State v. Jackson*, 259 Or. App. 248, 250, 313 P.3d 383 (2013)). However, that standard only applies "if the charged conduct is of a purely communicative nature." 259 Or. App. at 250 (internal quotations omitted). Here, the alleged conduct was not of a purely communicative nature. In addition to expressive acts such as speaking to Child and calling to report child abuse, Plaintiff video recorded Sanchez, took photographs of Child, and took Child to be examined for abuse.

25 – OPINION & ORDER

In finding probable cause, Defendant Frasier relied on a report from an attorney who sent corroborating documents, an interview with the alleged victim of stalking, a forensic interview of the child alleged to be abused, and an interview with a social worker with knowledge of the abuse allegations. The various witness accounts were consistent with each other. These sources of evidence are the sort of presumptively trustworthy and reliable evidence that police officers may rely on. This is unlike a case such as *Stoot*, where the officer unreasonably relied on the shifting testimony of a four-year-old. 582 F.3d at 919-20. Because the police report on its face supports a finding of probable cause, the Court considers whether any of Plaintiff's challenges to the police report undermine the finding of probable cause.

Plaintiff alleges that Defendant Frasier knowingly and intentionally failed to write anything positive about Plaintiff in his report, deliberately failed to include information about Sanchez's criminal history, and drafted the report in a way that negatively characterized Plaintiff's actions. SAC ¶¶ 16, 18, 25-27, 800-805, 818, 940-942, 948, 950-952, 954. She also alleges that Defendant Frasier relied on hearsay in the police report. *Id.* ¶¶ 21, 296, 819-825. Plaintiff alleges that some of the evidence from Hinman was not as stated. *Id.* ¶¶ 294, 929-931. She alleges that Defendant Frasier mischaracterized the video evidence in his report to make it seem as though Plaintiff was speaking aggressively and using leading questions when speaking to Child. *Id.* ¶¶ 917, 923. She alleges that the video and GoFundMe were not posted, and Defendant Frasier should have verified this rather than relying on Hinman's report. *Id.* ¶¶ 920-921, 926. She alleges that Defendant Frasier interviewed more people in favor of Sanchez and failed to interview certain people who would have supported Plaintiff's position. SAC ¶¶ 795-798, 809-812. Plaintiff argues that Defendant Frasier improperly made legal conclusions in recommending that Plaintiff be charged with stalking. *Id.* ¶¶ 28, 955-960. The Court also notes

that Plaintiff references seven "intentional deceit[s]" by Defendant Frasier, but six of them challenge Defendant Frasier's 2019 child abuse investigation report. *See* SAC ¶¶ 826-916. The seventh deceit Plaintiff alleges covers the allegations summarized above, including mischaracterization of evidence and reliance on hearsay. *See id.* ¶¶ 917-931.

County Defendants correctly assert that Plaintiff fails to allege a lack of probable cause. County Def. Mot. 7-10. Defendant Frasier received a call from an attorney with substantial information about potential stalking, spoke to the alleged victim, attended a forensic interview of the child Plaintiff alleged had been abused, and spoke to a social worker with knowledge of the case who also stated that he did not see indicators of abuse. Plaintiff disagrees with the conduct of the investigation and argues that Defendant Frasier should have credited her version of events and her interpretation of evidence. She does not dispute making multiple calls to DHS to report child abuse as the police report states. She admits to video recording Sanchez. SAC ¶ 1025. She admits to taking 26 photographs of Child between November 2018 and October 2020. *See* Schoene Decl. Ex. 83, ECF 31 (photographs of Child). Plaintiff's argument is that her actions were justified because she believed Sanchez was abusing Child. *See* SAC ¶ 1025. But Defendant Frasier was not required to either credit or rule out Plaintiff's explanation. *See O'Doan v. Sanford*, 991 F.3d 1027, 1043 (9th Cir. 2021) ("'[P]robable cause does not require officers to rule out a suspect's innocent explanation for suspicious facts.'") (quoting *D.C. v. Wesby*, 583 U.S. 48, 61 (2018)).

While Plaintiff challenges Defendant Frasier's reliance on hearsay, a police officer may rely on hearsay in investigating a crime. *Hart v. Parks*, 450 F.3d 1059, 1066 (9th Cir. 2006) ("Police may rely on hearsay and other evidence that would not be admissible in a court to determine probable cause[.]"). Hearsay may be used to establish probable cause "because [t]he

question of probable cause depends not upon the admissibility of the evidence upon which the government relies but only upon the legal sufficiency and reliability of the evidence." *United States v. $405,089.23 U.S. Currency*, 122 F.3d 1285, 1289 (9th Cir. 1997) (internal quotations omitted). Defendant Frasier relied on the corroborating accounts of multiple individuals and personally attended a forensic interview of the child. This information provided an adequate basis for finding probable cause. *See United States v. Schmekel*, 416 F. App'x 625, 626 (9th Cir. 2011) (magistrate judge properly relied on hearsay statements in affidavit of probable cause for search warrant because the basis for the statements was known, the accounts were consistent and interlocking, and some of the information was corroborated by independent police investigation).

Plaintiff also challenges Defendant Frasier's failure to include information about Sanchez's criminal history or favorable information about Plaintiff such as her lack of criminal history and her successful business endeavors. SAC ¶¶ 800, 950-951. While police officers may rely on the totality of the circumstances in establishing probable cause, "they also may not disregard facts tending to dissipate probable cause." *United States v. Lopez*, 482 F.3d 1067, 1073 (9th Cir. 2007). In *Lopez*, for example, police stopped the defendant near the scene of an attempted shooting, but when they checked his identity, they determined that he had a different name and appearance from the description of the suspect. *Id.* at 1075. That information tended to dissipate probable cause to arrest him. *Id.* Plaintiff's case is not like *Lopez*. First, the police report did acknowledge that Sanchez had been investigated for child abuse. It did not list every prior incident, but Defendant Frasier did summarize parts of his 2019 investigation. The other information Plaintiff alleges is lacking would not have undermined the probable cause finding. Sanchez's DUIs are at best tangentially relevant to the determination of whether Plaintiff stalked Sanchez. Plaintiff's theory is that Sanchez's DUIs are indicative of her overall bad character and

lack of suitability as a parent, supporting Plaintiff's belief that Sanchez abused Child. Sanchez's history of DUIs, if included, would not tend to dissipate probable cause to charge Plaintiff with stalking. Likewise, Plaintiff's lack of criminal history and successful business do not tend to dissipate probable cause.

Plaintiff alleges that Defendant Frasier failed to interview two DHS social workers with whom Plaintiff had spoken about concerns of abuse, Melissa Cacho and Maleea Briggs. SAC ¶ 797. She alleges that she reported abuse to Cacho in January 2020, and Cacho was concerned about the possibility of abuse and advised her to seek an immediate danger order. *Id.* ¶¶ 470-473. She alleges that Cacho and Briggs both testified during the custody trial that they were concerned that Child was being abused. *Id.* ¶ 616. Given the other information Defendant Frasier had received, including detailed information from a DHS social worker who stated that there was no abuse and that Plaintiff was being investigated for mental injury of Child, Plaintiff has failed to allege a lack of probable cause based on failure to interview witnesses favorable to her. The conflicting opinions of social workers could complicate efforts to prove the stalking case beyond a reasonable doubt, but they do not negate a finding of probable cause. Defendant Frasier was not required to interview every social worker with whom Plaintiff had interacted to see which ones credited her concerns of abuse. *See Valencia v. Cnty. of San Bernardino*, No. CV 16-2169 DSF (SPX), 2017 WL 11634381, at *6 (C.D. Cal. Dec. 8, 2017) (failure to interview suspect's alibi witnesses does not on its own negate probable cause to arrest suspect); *Clemmons v. Hathaway*, No. 517CV01729VAPFFMX, 2019 WL 13036250, at *4 (C.D. Cal. Mar. 13, 2019) (allegations that police officers failed to interview potentially relevant witnesses did not negate finding of probable cause to arrest plaintiff).

Plaintiff also alleges that Defendant Frasier relied on Hinman's description of the doctor's reports she forwarded to him and did not independently verify the truth of that description. SAC ¶¶ 927-931. She attaches the letter from Dr. Hernson that Hinman forwarded to Defendant Frasier. Schoene Decl. Ex. 14.[3] Dr. Hernson wrote that she performed an administrative review of Child's file. *Id.* She wrote, "There is not sufficient evidence for physical abuse, there is no evidence of medical child abuse." *Id.* Dr. Hernson also wrote, "There is constant hostility and adversarial relationship between Greta [Sanchez] and Kim [Schoene] primarily with Michael [Allen] in the background." *Id.* She continued: "The constant documentation and interrogation of [Child] has not been productive and the hostility between the two families is causing emotional stress for the child." *Id.* She did not believe there was evidence to diagnose emotional abuse by either Sanchez or Plaintiff but did believe that the poor relations between Sanchez and Plaintiff were "deleterious to [Child's] well being." *Id.* It was reasonable for Defendant Frasier to interpret this letter as evidence that Plaintiff was stalking Sanchez. To the extent Plaintiff criticizes Dr. Hernson's methodology or conclusions, the account was consistent with much of the other information Defendant Frasier received, supporting its reliability for the purposes of a probable cause determination.

To the extent Plaintiff challenges Defendant Frasier's reliance on and characterization of the video of her interview with Child and his reliance on the GoFundMe, both of which she alleges were not actually posted, those facts also fail to allege a constitutional violation. Plaintiff alleges that Defendant Frasier relied on those documents as provided by attorney Hinman and failed to independently verify that they were posted. SAC ¶¶ 920-922, 925-926. Plaintiff's

---

[3] The Court spells the doctor's name as it is written in the letter the doctor wrote that Plaintiff attaches as an exhibit, which is different from how Plaintiff and Defendant Frasier spelled it.

allegations support at most a claim that Defendant Frasier negligently failed to fully investigate, which is not a constitutional violation. "Omissions or misstatements resulting from negligence or good faith mistakes will not invalidate an affidavit which on its face establishes probable cause." *United States v. Smith*, 588 F.2d 737, 740 (9th Cir. 1978). Plaintiff does not dispute that she did make the video, so even if it was not posted, Defendant Frasier could reasonably consider it as evidence of stalking, and he was entitled to interpret it as he saw it. Plaintiff also alleges that while she did not post the GoFundMe, a friend drafted it for her and it was in her private draft box. SAC ¶¶ 920, 926. Taking as true Plaintiff's allegations that the video and GoFundMe were not posted, the police report would still establish probable cause if the video were known to not have been posted online and the GoFundMe were not considered at all. Ample evidence besides those two items supported the finding of probable cause.

In sum, while Plaintiff characterizes some of Defendant Frasier's actions as deceit, the facts in the SAC relevant to her claims at most support an inference of negligence or a mistake. Plaintiff has not alleged a lack of probable cause to charge her with stalking. For that reason, the malicious prosecution claim must be dismissed.

        b.    Favorable Termination

County Defendants argue that Plaintiff cannot show a favorable termination of the proceedings because the dismissal of charges was conditional pursuant to a plea agreement in which she agreed to limitations on her freedom imposed by the Court. County Def. Mot. 11. The conditional judgment of dismissal provides that Plaintiff cannot have any contact with Greta Sanchez or her child and that if Plaintiff suspects abuse of the child, she is to report it to her attorney rather than contacting any child welfare agencies. Hisel Decl. Ex. 1 at 7. It also provides that if Plaintiff violates any of the conditions, the State may reissue the charge prior to March 24,

2024. *Id.* at 8. This situation presents a difficult question. County Defendants point to a citation

from *Thompson* that "the technical prerequisite is only that the particular prosecution be disposed

of in such a manner that this cannot be revived, and the prosecutor, if he proceeds further, will be

put to a new one." 596 U.S. at 46 (citations omitted). The prosecution in this case could be

revived up to March 24, 2024. For that period, there was no termination in Plaintiff's favor. After

March 24, 2024, the conditions no longer apply, and the State would be required to initiate new

proceedings against Plaintiff. The Court need not decide whether these circumstances constitute

a favorable termination, as Plaintiff has failed to allege a lack of probable cause or that

Defendant Frasier instituted the charges against her.

           c.     Seizure

        County Defendants argue that Plaintiff cannot meet the seizure element because

Defendant Frasier did not arrest her. County Def. Mot. 11. The SAC alleges that after Plaintiff

was charged, she "plead [sic] not guilty, but was still required to turn herself in for a book and

release at NORCOR in The Dalles, Oregon on October 4, 2021." SAC ¶ 980. The SAC alleges

that personnel at NORCOR "aggressively searched [Plaintiff] for weapons or other items,"

handcuffed her, fingerprinted her, and made her remove most of her clothing. *Id.* ¶ 981. In

support of these allegations, Plaintiff cites and attaches an order from Hood River County Circuit

Court. Schoene Decl. Ex. 18. The document reflects that the circuit court ordered Plaintiff to

report to NORCOR for book and release on October 4, 2021. *Id.* at 2. County Defendants are

correct that Defendant Frasier did not arrest Plaintiff. It is unclear from the caselaw whether this

element could be met based on Defendant Frasier's investigation leading Defendant Rasmussen

to file charges against Plaintiff, which in turn led the circuit court to order her to present herself

for a book and release. The issue need not be resolved because Plaintiff has failed to allege a lack of probable cause or that Defendant Frasier instituted the charges against her.

          ii.     Due Process Claim

Plaintiff's due process claim against Defendant Frasier fails for the same reasons as her malicious prosecution claim. Plaintiff relies on the same factual allegations. *See* SAC ¶¶ 1354-1376. Although Plaintiff ascribes various mental states to Defendant Frasier, including intent, recklessness, and negligence, *id.* ¶¶ 1357, 1360, the well-pleaded factual allegations only support a finding of negligence. Plaintiff alleges that Defendant Frasier was biased against her, but she does not dispute most of the facts in the police report, instead arguing that Defendant Frasier characterized her in a negative way and failed to include information in her favor. She also alleges that Defendant Frasier failed to interview witnesses in her favor and relied on hearsay that turned out to be false. *Id.* ¶¶ 1364, 1366-1367. For the reasons the Court has already explained, these actions do not amount to a constitutional violation. Plaintiff has at most alleged negligence. County Defendants correctly assert that allegations of negligence do not state a claim for a due process violation. County Def. Mot. 12 (citing *Daniels v. Williams*, 474 U.S. 327, 328 (1986)). The Court therefore dismisses Plaintiff's due process claim against Defendant Frasier.

Defendant Frasier also argues that he is entitled to qualified immunity. County Def. Mot. 13-14. The Court has concluded that Plaintiff's § 1983 claims against Defendant Frasier fail because they allege mere negligence, and the malicious prosecution claim also fails because Plaintiff failed to allege that Defendant Frasier instituted charges or that charges were instituted without probable cause. It is therefore unnecessary to decide whether Defendant Frasier is entitled to qualified immunity.

**II.    Claim for Violation of 28 C.F.R. § 94.101 *et seq*.**

Plaintiff's fifth claim for relief alleges that Defendants Rasmussen, HRDA, and the

County of Hood River violated 28 C.F.R. § 94.101 *et seq.*, a federal regulation implementing

provisions of the Victims of Crime Act ("VOCA"). SAC ¶¶ 1317-1353. Plaintiff alleges that the

listed Defendants misused funding received through VOCA. *Id.* Defendants argue that the claim

must be dismissed because Plaintiff has no cause of action. County Def. Mot. 14-15; State Def.

Mot. 7. The regulations implement provisions of VOCA covering federal grants of funds to the

states to assist victims of crimes. 28 C.F.R. § 94.101(a) (citing 34 U.S.C. § 20103). The statute

does not expressly create a cause of action for citizens to sue based on alleged misuse of these

federal grants. The Court must therefore determine whether an implied cause of action exists.

"Like substantive federal law itself, private rights of action to enforce federal law must be

created by Congress." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001). "The judicial task is to

interpret the statute Congress has passed to determine whether it displays an intent to create not

just a private right but also a private remedy." *Id.* Where the text of a federal statute only

demonstrates an intent to enforce existing rights rather than create new rights, it is unlikely to

demonstrate an intent to create a cause of action. *Id.* at 288-89 (holding that section 602 of Title

VI did not create a private cause of action because it focused on the agencies that would regulate

receipt of funds under the statute). "Language in a regulation may invoke a private right of action

that Congress through statutory text created, but it may not create a right that Congress has not."

*Id.* at 291.

The Court concludes that Plaintiff has no private right of action to challenge a state or

municipality's use or misuse of VOCA funds. The relevant statutory provision, 34 U.S.C. §

20103, provides direction on how funds should be distributed, lists the criteria a victim assistance

program must meet to receive funding, and instructs the director of the relevant federal agency to monitor compliance with program requirements. Nothing in the statute indicates that Congress intended to create a private right of action to challenge the use of funds. The federal agency is to monitor program compliance. Just like the statute at issue in *Alexander*, the statute here does not create any rights. The implementing regulations, which cannot create a cause of action in any event, are consistent with this conclusion, as they do not contain any provisions discussing a right to sue for misuse of funds or how such a claim might be handled. Plaintiff has no cause of action to challenge misuse of VOCA funds, so her fifth claim for relief must be dismissed.

## III.    State-Law Claims

### A.    State Defendants

Plaintiff brings state-law claims for malicious prosecution, abuse of process, IIED, and violation of the Oregon Constitution's guarantee of freedom of expression against Defendants Rasmussen and HRDA. State Defendants argue that the State of Oregon should be substituted in their place and that sovereign immunity applies. State Def. Mot. 4-6. The Court agrees as to most of Plaintiff's allegations.

The Oregon Tort Claims Act ("OTCA") provides that when an action alleges damages equal to or lesser than specified limits, "the sole cause of action for a tort committed by officers, employees or agents of a public body acting within the scope of their employment or duties and eligible for representation and indemnification under ORS 30.285 (Public body shall indemnify public officers) or 30.287 (Counsel for public officer) is an action against the public body." O.R.S. 30.265(3). In such actions "the court upon motion shall substitute the public body as the defendant." *Id.*

Plaintiff seeks $2,170,000 in economic and noneconomic damages. SAC ¶ 1424.[4] State Defendants argue this is under the liability limit allowed under O.R.S. 30.271(2)(g), and (4). State Def. Mot. 5. They refer to the tort claim limit for causes of action arising between July 1, 2023, and July 1, 2024. *Id.* n.1. The SAC indicates that some of Plaintiff's claims may have arisen a year or two earlier, but that does not change the analysis. The economic and noneconomic damages she seeks are under the cap for causes of action arising as early as July 1, 2018, and continuing to the present. *See* Tort Claims Table of Liability Limits, *available at* https://www.courts.oregon.gov/Documents/Table-of-Liability-Limits.pdf. Because the SAC indicates that Plaintiff's claims arose after July 1, 2018, her claims are within the damages cap.

State Defendants also assert, "There is no allegation in the Second Amended Complaint that any defendant was acting outside the course and scope of their official duties when engaging in the conduct at issue in this case." State Def. Mot. 5 (citing SAC ¶ 76). Plaintiff alleges that the individual Defendants were acting within the scope of their employment. SAC ¶ 76. While that is a legal conclusion not entitled to be taken as true, the Court has reviewed the factual allegations in the SAC, and it is apparent that most of them challenge Defendant Rasmussen's conduct as a prosecutor. Plaintiff challenges Defendant Rasmussen's investigation tactics, charging decisions, handling of witnesses, disclosure or nondisclosure of evidence, plea negotiations, and trial preparation and trial strategy. *E.g.*, SAC ¶¶ 2, 7, 9, 15, 26, 29, 30-34, 37, 45, 956, 970, 1056. For such actions, Defendant Rasmussen was acting within the scope of her employment. Plaintiff provides no meaningful argument to the contrary. The Court therefore substitutes the State of

---

[4] Plaintiff also reserved her right to seek punitive damages under Oregon law in the future but does not do so at this time. SAC ¶ 98.

Oregon in place of Defendants Rasmussen and HRDA for Plaintiff's state-law claims insofar as they challenge Defendant Rasmussen's prosecution of Plaintiff.

State Defendants then argue that the claims are barred by sovereign immunity. State Def. Mot. 5. As discussed above, states are entitled to sovereign immunity unless they expressly waive it or Congress abrogates it. Through the OTCA, Oregon waived sovereign immunity for state-law tort claims. O.R.S. 30.265(1); *E. J. T. by & through InTRUSTment, Nw., Inc. v. Jefferson Cnty.*, 370 Or. 215, 221, 518 P.3d 568 (2022). However, that waiver does not extend to suits in federal court. A state may waive its sovereign immunity by express language in a statute, but federal courts must apply a strict standard in determining whether a state has done so. *Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 305-06 (1990). A statutory provision generally consenting to suit is insufficient to establish consent to suit in federal court. *Id.* at 306. The state must expressly and unambiguously consent to suit in federal court. *Id.*

The State of Oregon did not expressly and unambiguously consent to suit in federal court through the OTCA. As another court in this district observed several years ago, the OTCA "does not mention the federal courts whatsoever" in waiving sovereign immunity. *Easton v. Shulkin*, No. 6:18-CV-00233-AA, 2018 WL 4901161, at *4 (D. Or. Oct. 9, 2018). The State's consent to suit for tort claims extends only to suits in state court. The State has not waived its sovereign immunity for state tort claims in federal court. Thus, the Court must dismiss Plaintiff's state-law claims against the State of Oregon without prejudice as to refiling in state court to the extent they challenge the prosecution of Plaintiff.

In reviewing the SAC, however, the Court found two sets of alleged actions that may not be within the scope of Defendant Rasmussen's employment. Plaintiff alleges that Defendant Rasmussen attempted to prevent her from filing objections to Sanchez's motions to set aside

certain criminal convictions. SAC ¶¶ 704, 713. This conduct appears to fall within the duties of a court clerk rather than a prosecutor. However, Plaintiff fails to state any claim for relief for two reasons. First, Plaintiff's allegations that Defendant Rasmussen directed court clerks to reject the filings are wholly conclusory. *See id.* ¶ 713. The well-pleaded facts do not give rise to a plausible inference that Defendant Rasmussen, rather than senior court administrative staff, directed that the filings be rejected. *See id.* ¶ 704.

Second, Plaintiff had no right to file objections to a motion to vacate a conviction in Sanchez's criminal cases. Plaintiff was not a party to these matters or even a victim. She alleges that she told the court clerk that she was acting as an agent and representative of the Hood River County Circuit Court. *Id.* ¶ 704(p). No factual allegations in the SAC support Plaintiff's belief. Indeed, they support a contrary inference. Plaintiff does not allege that she is an attorney or employed by any government entity; rather, she operates a hair salon as a private citizen. The Oregon Rules of Criminal Procedure provide that the prosecuting attorney may file an objection to a criminal defendant's motion to set aside a criminal conviction. O.R.S. 137.225(2)(a). If the prosecutor files an objection, the court must hold a hearing, and the victim has the right to speak at the hearing. O.R.S. 137.225(3)(a). Nothing in the rule gives anyone other than the prosecutor the right to file objections. This Court has found no authority supporting the notion that a private citizen such as Plaintiff has the right to file formal objections to a criminal defendant's motion to set aside a conviction. Relevant authority leads the Court to conclude that no such right exists. The Supreme Court has repeatedly held that "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973); *Diamond v. Charles*, 476 U.S. 54, 64 (1986). To the extent Plaintiff's state-law

claims (or, indeed, her federal claims) challenge the refusal of her filings, the claims fail as a matter of law and must be dismissed.

Plaintiff also alleges that in the state-court lawsuit she filed against Defendant Rasmussen and others at CGCAC, the attorney representing the defendants committed litigation misconduct including filing a motion to change venue with incorrect information, failing to file a motion to seal, and failing to provide information in discovery. SAC ¶¶ 1143, 1153. She alleges that Defendant Rasmussen directed the attorney not to provide discovery. *Id.* ¶ 1154. This action appears to be taken in Defendant Rasmussen's capacity as a defendant in a civil suit, not a prosecutor. Plaintiff attaches a copy of the complaint, which names Defendant Rasmussen in her capacity as an individual and as founder and board vice chair of CGCAC, not as District Attorney. Schoene Decl. Ex. 31 at 1. But some of Defendant Rasmussen's actions as alleged in that case are closely entwined with the prosecutorial conduct alleged here. *See generally* Schoene Decl. Ex. 31.

Assuming without deciding that Defendant Rasmussen did not act within the scope of her employment, the Court concludes that Plaintiff fails to state any claim for relief based on these allegations. The allegations that Defendant Rasmussen caused the alleged litigation misconduct are wholly conclusory. In addition, Plaintiff alleges that the case is ongoing. SAC ¶ 1155. It is not the place of this Court to resolve the issues Plaintiff describes. The state court is responsible for handling nondisclosure of discovery through devices such as a motion to compel, and other alleged litigation misconduct may be handled through motions for sanctions or other remedies available in state trial courts. *See Miofsky v. Superior Ct. of State of Cal., In & For Sacramento Cnty.*, 703 F.2d 332, 335 (9th Cir. 1983) ("[I]t is not the province of lower federal courts, as a general rule, to review state court discovery orders[.]"). This case does not present an exception

to the general rule that "'state courts shall remain free from interference by federal courts.'" *Id.* (quoting *Atlantic Coast Line R.R. v. Brotherhood of Locomotive Engineers*, 398 U.S. 281, 282 (1970)). *See also MySpine, PS v. USAA Cas. Ins. Co.*, No. C13-2179, 2014 WL 2860682, at *5 (W.D. Wash. June 23, 2014) (declining to address plaintiff's motion for sanctions for conduct in state court proceeding being remanded to state court because it was for the state court to determine appropriate sanctions for that conduct). Finally, there is no independent basis for subject matter jurisdiction over Plaintiff's state-law claims, as all parties are citizens of Oregon. The Court is dismissing all of Plaintiff's federal claims. Even if Plaintiff could state a claim for relief based on conduct in the state court litigation, the Court would decline to exercise supplemental jurisdiction over the claim. *See* 28 U.S.C. 1367(c)(3).

In sum, the Court dismisses Plaintiff's state-law claims against State Defendants. To the extent the claims challenge Defendant Rasmussen's conduct within the scope of her employment, the State must be substituted as the defendant, and sovereign immunity applies. To the extent the claims challenge conduct outside the scope of her employment, Plaintiff has failed to state a claim for relief.

B.      County Defendants

Plaintiff brings a state-law malicious prosecution claim against County Defendants. Under Oregon law, the elements of a malicious prosecution claim are:

> (1) the institution or continuation of the original criminal proceedings; (2) by or at the insistence of the defendant; (3) termination of such proceedings in the plaintiff's favor; (4) malice in instituting the proceedings; (5) lack of probable cause for the proceeding; and (6) injury or damage because of the prosecution.

*Blandino v. Fischel*, 179 Or. App. 185, 190-91, 39 P.3d 258 (2002).

County Defendants rely on the same arguments they relied on for the federal malicious prosecution claim. County Def. Mot. 15. They also argue that to the extent Plaintiff plausibly

alleges a malicious prosecution claim against Defendant Rasmussen, neither Defendant Frasier nor the City nor the County was in a principal-agent or respondeat superior type relationship with Defendant Rasmussen for the conduct at issue. *Id.*

The state-law malicious prosecution claim against County Defendants fails because the SAC alleges that charges were instituted and continued by Defendant Rasmussen, and because Plaintiff has failed to allege that County Defendants lacked probable cause. The analysis of those elements is the same as for the federal claim. Because Plaintiff has failed to allege a lack of probable cause, the Court need not address County Defendants' second argument. The Court therefore dismisses the state-law malicious prosecution claim against County Defendants.

## IV.    Leave to Amend and Nature of Dismissal

A party may amend its pleading once as a matter of course or, thereafter, "only with the opposing party's written consent or with the court's leave." Fed. R. Civ. P. 15(a)(1)-(2). "The court should freely give leave when justice so requires." *Id.* However, the court need not grant leave to amend if the amendment "(1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile." *AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 951 (9th Cir. 2006) (citations omitted).

"Futility of amendment can, by itself, justify the denial of a motion for leave to amend." *Gonzalez v. Planned Parenthood of Los Angeles*, 759 F.3d 1112, 1116 (9th Cir. 2014) (internal quotation omitted). Amendment is futile "only if no set of facts can be proved . . . that would constitute a valid and sufficient claim or defense." *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988). Dismissal of a pro se complaint without leave to amend is proper only if it is clear that the deficiencies of the complaint could not be cured by amendment. *Lucas*, 66 F.3d 2at 248. "[T]he district court's decision to deny leave to amend is particularly broad where plaintiff

has previously amended the complaint." *City of Los Angeles v. San Pedro Boat Work*, 635 F.3d 440, 454 (9th Cir. 2011) (internal quotations omitted).

Most of Plaintiff's claims fail as a matter of law. Amendment of those claims would be futile. In addition, the Court already granted Plaintiff leave to amend her Complaint after County Defendants moved to dismiss the FAC. The SAC is 233 pages long and is accompanied by a declaration attaching over 2,000 pages of documents. Plaintiff had ample opportunity to state a claim for relief and has failed to do so. The Court concludes that justice does not require further leave to amend and therefore dismisses the SAC without leave to amend.

The Court is dismissing most of the claims against the State Defendants based on sovereign immunity. Because sovereign immunity bars the claims in federal court only, dismissal shall be without prejudice as to refiling in state court. Likewise, Plaintiff's claims based on the conduct of ongoing litigation in state court are dismissed without prejudice. But Plaintiff's claims based on the refused filings are dismissed with prejudice because Plaintiff lacks a legal basis for relief.

As for the County Defendants, the § 1983 claims against Defendants Hood River County, the City of Hood River, and HRPD must be dismissed with prejudice because they fail as a matter of law. The § 1983 claim against Defendant Frasier fails as a matter of law because there was probable cause to charge Plaintiff with stalking and because Plaintiff alleges only negligent conduct. The state-law malicious prosecution claim fails as to County Defendants because Plaintiff has failed to allege a lack of probable cause. The Court declines to address whether Plaintiff might be able to state a negligence claim against Defendant Frasier. There is no independent basis for subject matter jurisdiction over such a claim, and the Court would decline to exercise supplemental jurisdiction over it. *See* 28 U.S.C. 1367(c)(3).

## V.    Attorney Fees

County Defendants argue that Plaintiff should be required to pay their reasonable

attorney fees under 42 U.S.C. § 1988 and O.R.S. 20.105. County Def. Mot. 16. A district court

may award attorney fees to a prevailing defendant under § 1988 "only in exceptional

circumstances." *Harris v. Maricopa Cnty. Superior Ct.*, 631 F.3d 963, 971 (9th Cir. 2011)

(citation omitted). The prevailing defendant must show that the plaintiff's claims were

"'frivolous, unreasonable, or groundless.'" *Id.* (quoting *Christiansburg Garment Co. v. Equal

Emp. Opportunity Comm'n*, 434 U.S. 412, 422 (1978) (so holding in the context of Title VII

claims)). The district court should not conclude that the plaintiff's case was meritless based only

on the plaintiff's failure to prevail. *Christiansburg*, 434 U.S. at 422. "Even when the law or the

facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable

ground for bringing suit." *Id.* "A case may be deemed frivolous only when the result is obvious

or the . . . arguments of error are wholly without merit." *Karam v. City of Burbank*, 352 F.3d

1188, 1195 (9th Cir. 2003) (internal quotations omitted). For example, the Ninth Circuit held that

a plaintiff's claim for intimidation under the Americans with Disabilities Act ("ADA") was

frivolous because "[b]y its own terms, protection under the ADA against intimidation does not

extend to a plaintiff's attempts to exercise rights granted or protected by the IDEA—the basis of

K.S.'s claim in this case." *C.W. v. Capistrano Unified Sch. Dist.*, 784 F.3d 1237, 1247 (9th Cir.

2015).

Oregon law provides:

[T]he court shall award reasonable attorney fees to a party against whom a claim,
defense or ground for appeal or review is asserted, if that party is a prevailing party
in the proceeding and to be paid by the party asserting the claim, defense or ground,
upon a finding by the court that the party willfully disobeyed a court order or that
there was no objectively reasonable basis for asserting the claim, defense or ground
for appeal.

O.R.S. 20.105(1). Oregon courts have followed the *Christiansburg* standard in applying this provision. *McCarthy v. Oregon Freeze Dry, Inc.*, 334 Or. 77, 81, 46 P.3d 721 (2002). "Attorney fees under ORS 20.105 might also become appropriate when a party continues to litigate a claim or defense after it is clear that the plaintiff's legal position no longer has any arguable support in the law as applied to the facts." *Andlovec v. Spoto*, 326 Or. App. 525, 528, 532 P.3d 531 (2023) (internal quotations omitted).

County Defendants argue that fees should be awarded because Plaintiff's lawsuit is part of "a campaign of frivolous complaints against attorneys, judges, and those Plaintiff considers her adversaries." County Def. Mot. 16. They state that Plaintiff has also filed five frivolous stalking order petitions against several individuals, including Sanchez, Defendant Rasmussen, and judges whose rulings she disagreed with. *Id.* They also point out that the SAC included considerable personal information that was not directly relevant to Plaintiff's claims, such as the name of Defendant Frasier's deceased grandchild. *Id.* Finally, they point out that Plaintiff filed the SAC after County Defendants filed a Motion to Dismiss with most of the same arguments as the present Motion. *Id.* at 17.

The Court found that most of Plaintiff's claims against County Defendants fail as a matter of law, and the result was obvious for many of them. However, the Court is also mindful that Plaintiff is representing herself in this litigation. "The *Christiansburg* standard is applied with particular strictness in cases where the plaintiff proceeds pro se." *Miller v. Los Angeles Cnty. Bd. of Educ.*, 827 F.2d 617, 620 (9th Cir. 1987). The Ninth Circuit has recognized that "pro se plaintiffs cannot simply be assumed to have the same ability as a plaintiff represented by counsel to recognize the objective merit (or lack of merit) of a claim." *Id.* Many of Plaintiff's claims failed for technical reasons such as who constitutes a proper defendant under § 1983 and

whether sovereign immunity applies. The Court also conducted an extensive analysis of probable

cause. It is not apparent to the Court that Plaintiff understood the relevant standards and ignored

them. This is not a situation where Plaintiff is realleging claims the Court has already dismissed

as unfounded. *See* 827 F.2d at 620. Finally, Plaintiff only persisted with her claims to the extent

of filing the SAC and opposing the Motions to Dismiss. Under these circumstances, the Court

concludes that County Defendants should not be awarded attorney fees.

## CONCLUSION

The Court GRANTS County Defendants' Motion to Dismiss [36]. The Court GRANTS

State Defendants' Motion to Dismiss [38]. The Court DENIES Plaintiff's Request for Judicial

Notice [42]. The Court GRANTS Plaintiff's Motion to Supplement [45]. The Court DENIES

County Defendants' request for attorney fees.

IT IS SO ORDERED.


DATED:＿＿＿＿May 14, 2024＿＿＿＿.



＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿
MARCO A. HERNÁNDEZ
United States District Judge